UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  | |  |
|---|---|---|
| TACUMA MASSIE, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. 18-cv-10391-ADB |
| SEAN MEDEIROS, | * | |
| Respondent. | * | |

**MEMORANDUM AND ORDER ON HABEAS PETITION**

BURROUGHS, D.J.

Petitioner Tacuma Massie ("Petitioner") was sentenced to life in prison following his

September 2013 convictions for murder in the first degree and related charges. [ECF No. 37 at

1]; Commonwealth v. Mendez, 69 N.E.3d 968, 971 (Mass. 2017). Currently pending before this

Court is Petitioner's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.

[ECF No. 1]. For the reasons stated herein, the petition is DENIED.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

The Massachusetts Supreme Judicial Court ("SJC") provided an account of the facts,

which is excerpted below.[1]

> On the evening of November 18, 2010, just after 6 p.m., the defendants [Petitioner
> and co-defendant Charles Mendez] ambushed and robbed Ryan Moitoso in a
> parking lot. Moitoso thought he was meeting Mendez's girl friend to sell her
> marijuana. The girl friend drove the defendants near the area where she was to
> meet Moitoso and let them out of her vehicle. As Moitoso spoke with the girl
> friend, the defendants approached him from behind. One of them hit him in the
> head with a hard metal object and told him to empty his pockets. Moitoso turned

---

[1] For purposes of habeas review, the Court presumes that the state court's factual findings are
correct. 28 U.S.C. § 2254(e)(1); see Dutil v. Murphy, 550 F.3d 154, 156 (1st Cir. 2008) ("The
factual findings of the state court are presumed to be correct under 28 U.S.C. § 2254(e)(1).").

over some cash and marijuana, and heard a clicking noise that sounded like a gun being cocked, before being allowed to return to his vehicle.  The defendants got back into the girl friend's vehicle, and she drove away.  When she asked what had happened, one of the defendants replied, "That's life," and tossed a bag of marijuana into the front passenger area.

Next, the girl friend dropped the defendants off at a nearby housing complex where [Petitioner] had arranged to meet Platts (victim) on the pretext of wanting to make a marijuana purchase.   The defendants intended to rob the victim of the approximately $4,000 that, [Petitioner] had learned, he was carrying that day.  Prior to the meeting, a witness was parked in the housing complex and, while sitting in his vehicle, observed two men fitting the description of the defendants walk by him. The victim, who had a puppy with him, parked his vehicle behind the witness's vehicle.  The witness then observed the same two men walk toward the back of his vehicle.   Within seconds, the witness heard a gunshot and a vehicle engine accelerate, and then he felt the victim's vehicle hit the back of his vehicle.   The witness telephoned 911 and told the dispatcher that a man had been shot.  A resident of the complex looked out of her window at the sound of the gun shot to observe an individual matching Mendez's description get out of the passenger side of the victim's vehicle and quickly leave the scene carrying something clutched to his chest.

In the meantime, Mendez's girl friend received several telephone calls from [Petitioner] between 6:41 and 6:49 p.m.  She returned to the complex and picked up both [Petitioner] and Mendez, pulling away quickly from the curb where they entered her vehicle.  A State trooper who was in the housing complex investigating the 911 call observed the vehicle's hasty departure, and followed it.

When the defendants were arrested, both were carrying handguns; [Petitioner]'s was loaded.  [Petitioner] had more than $4,000 in cash, Mendez's clothes were stained with the victim's blood, and police found the victim's puppy in the [girl friend's] vehicle.  Police found Mendez's hat in the victim's vehicle.

The victim was shot at close range behind his right ear as he sat in his vehicle.  At trial, Mendez claimed that the victim had drawn a gun on him and, after a struggle, he shot the victim in self-defense.  He also claimed that the handgun that he had had in his possession when he was apprehended belonged to the victim.

Mendez, 69 N.E.3d at 972 (citation omitted).  Following the indictment, Petitioner and Mendez

moved to suppress evidence, including firearms, seized by police when their vehicle was stopped

shortly after Platts was killed.  [Supplemental Answer ("S.A.") at 1, 190–207].  On December 4,

2012, after an evidentiary hearing, the motion judge denied the motion to suppress.  [Id. at 190–

207].  The SJC summarized the facts found by the motion judge:

2

After the witness's vehicle was hit by the victim's, the witness telephoned 911 to report that a person had been shot in the head in his vehicle and was dead, and that the individuals involved had fled.  A State police trooper with the violent fugitive apprehension section, who was dressed in plain clothes and traveling nearby in an unmarked police cruiser, heard the police transmission of this report and headed toward the housing development.  Approximately two blocks from the development he observed a person moving quickly toward a parked vehicle.  Without stopping, the trooper relayed the registration plate number and learned that the vehicle was registered to a woman with no criminal history.  Moments later, and less than ten minutes after the initial 911 transmission, he arrived at the complex and began to patrol, looking for suspicious activity.

As the trooper drove through the housing complex, which he found to be unusually quiet, he observed an individual, later identified as Mendez, make a "beeline" to a white Honda Civic automobile that was stopped at the curb with its engine running.  Mendez entered at the rear passenger side of the vehicle, which started to pull away quickly, before Mendez had fully entered or closed the door.  Because of what appeared to the trooper to be a very unusual absence of any other people and lack of any other activity on the streets or sidewalks in the housing complex, and the vehicle's quick departure from the area, the trooper followed the vehicle while it traveled in a "serpentine route," meandering through the city streets.  Meanwhile, police who had responded to the scene at the housing complex confirmed to the trooper that a man had been shot in the head and killed.

While following the vehicle, the trooper reported its registration plate number and learned that an individual associated with the address of the vehicle's owner had "lots of violence" on his record, including a firearms charge, and pending drug charges.  The trooper, who could see that there were two persons seated in the back of the vehicle, radioed for backup.  Approximately four miles away from the housing complex, the driver of the vehicle stopped in front of a three-family home but kept the motor running.  As the trooper was without backup or a place to park, he stopped his vehicle in the middle of the street and waited.  Approximately fifteen to thirty seconds later, the two defendants got out of the back seat of the vehicle at the same time and turned to face him.  They were speaking to one another and both had their hands in their jacket pockets.  In fear of his safety, the trooper got out of his vehicle, showed his badge and said, "Police, don't move."  The two men fled in opposite directions.  Mendez ran toward the trooper but soon returned to the white vehicle, getting in and telling the driver to "take off."  The trooper drew his weapon and ordered the driver, later identified as Mendez's girl friend, to shut off the motor; she did so.  Once another officer arrived, police recovered a handgun that was tucked into Mendez's waistband.

In the meantime, a third officer saw [Petitioner], who was less than one block away from the white vehicle and running with one hand in his pocket.  The officer chased him and ordered him to stop.  [Petitioner] did not comply, but he was apprehended; he was carrying a loaded semiautomatic pistol and cash.

3

Mendez, 69 N.E.3d at 973–74 (footnotes omitted).

On September 27, 2013, a jury convicted Petitioner of first-degree murder, carrying a firearm without a license, carrying a loaded firearm without a license, and armed robbery, and Petitioner was sentenced to life in prison.  [S.A. at 3]; Mendez, 69 N.E.3d at 971.  Following his conviction, Petitioner filed a timely notice of appeal and the SJC affirmed Petitioner's conviction on February 22, 2017.  Mendez, 69 N.E.3d at 980.  On February 27, 2018, Petitioner filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  [ECF No. 1].  He later filed a memorandum of law in support of the petition, [ECF No. 37], which Respondent opposed, [ECF No. 44].  Petitioner then replied.  [ECF No. 55].

## II.    LEGAL STANDARD

A federal court cannot grant habeas relief to a state prisoner unless the prisoner has first exhausted his federal constitutional claims in state court.  28 U.S.C. § 2254(b)(1)(A).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  A claim for habeas relief is exhausted if it has been "fairly and recognizably" presented in state court.  Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)).  In other words, "a petitioner must have tendered his federal claim [in state court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question."  Id. (internal quotation marks and citations omitted).

Once a claim has been exhausted in state court, under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> [a]n application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any

4

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> To be deemed contrary to clearly established federal law, a state court decision must announce[] a rule of law that directly contradicts existing Supreme Court precedent or . . . reach[] a different result than the Supreme Court on materially indistinguishable facts. An unreasonable application occurs when the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case. Federal habeas relief only provides a remedy for instances in which a state court unreasonably *applies* [the Supreme] Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.

> These standards ensure that federal habeas relief will be granted only in cases in which all fairminded jurists would agree that a final state court decision is at odds with the Supreme Court's existing precedents. One consequence of this rule is that a federal court sitting in habeas jurisdiction may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous.

Bebo v. Medeiros, 906 F.3d 129, 134 (1st Cir. 2018) (alterations in original) (internal citations and quotation marks omitted).

With regard to whether a determination of the facts was unreasonable, the Supreme Court has noted that "[t]he term 'unreasonable' is no doubt difficult to define." Wood v. Allen, 558 U.S. 290, 301 (2010) (alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000). "It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Id. "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" Id. (second alteration in original) (quoting Rice v. Collins, 546 U.S. 333,

341–42 (2006)).

"If [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 562 U.S. 86, 102 (2011).  "This standard applies, however, only to a 'claim that was adjudicated on the merits in State court proceedings.'"  Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99; see also Johnson v. Williams, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.").  To overcome the presumption of adjudication on the merits, the evidence must lead "very clearly to the conclusion that a federal claim was inadvertently overlooked in state court . . . ."  Johnson, 568 U.S. at 303.

## III.    DISCUSSION

Petitioner initially raised eight grounds for habeas relief.  [ECF No. 1].  In his brief in support of his petition, however, Petitioner withdrew three grounds in their entirety: Ground Five, that it was an abuse of discretion for the SJC to deny his § 33E motion; Ground Seven, related to jury instructions on felony murder; and Ground Eight, related to jury instructions on second degree felony murder.  [ECF No. 37 at 45–46, 48–49].  In addition, he withdrew the portion of his Ground Two argument which related to the prosecutor's statement during his

closing argument regarding Petitioner's right to hear evidence against him.  [Id. at 24 n.6].[2]

Because these grounds have been withdrawn, this Court will not consider them.  The remaining

five grounds for relief include: Ground One, denial of his motion to suppress; Ground Two,

improper statements made during the prosecution's closing argument; Ground Three,

insufficiency of the evidence; Ground Four, prejudicial joinder; and Ground Six, improper jury

instructions regarding an immunized witness.  [ECF Nos. 1, 37].

### A.        Ground One: Denial of the Motion to Suppress

Petitioner asserts that this Court should grant his petition because police officers violated

his constitutional rights by stopping and searching him without reasonable suspicion and the

evidence impermissibly gained through that search was then admitted into evidence at trial.

[ECF No. 37 at 14–23].  Specifically, Petitioner argues that he was "deprived of 'an opportunity

for full and fair litigation' of his Fourth Amendment claim . . . . because the SJC did not address

[it], but rather addressed only state law."  [Id. at 15].  Respondent contends that the SJC clearly

analyzed Petitioner's claim under both federal and state law and that, even if reviewed on the

merits, there is no basis for habeas relief.  [ECF No. 44 at 7–11].

As Petitioner acknowledges, a habeas court normally will not consider relief related to

Fourth Amendment suppression decisions made by a state court.  [ECF No. 37 at 14–15]; Stone

v. Powell, 428 U.S. 465, 482 (1976).  "[W]here the State has provided an opportunity for full and

fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was

introduced at his trial."  Stone, 428 U.S. at 494; see also Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir.

---

[2] Petitioner submitted his petition *pro se*, but was appointed counsel prior to briefing on the
petition.  [ECF Nos. 24, 25].

2001) ("<u>Stone</u> thus stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims.").  Under <u>Stone</u>, habeas review of a Fourth Amendment claim is permitted only if "a habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." <u>Sanna</u>, 265 F.3d 1, 8; <u>see also</u> <u>Cavitt v. Saba</u>, 57 F. Supp. 3d 81, 91 (D. Mass. 2014) (stating that under <u>Stone</u>, as long as a petitioner fully and fairly litigated his Fourth Amendment claim in state court, "even if this Court believed that the state court had decided the [Fourth Amendment] issue wrongly . . . habeas relief could not follow").  "A 'full and fair' hearing is one in which the defendant is given an opportunity to present evidence and be heard on an issue." <u>Companonio v. O'Brien</u>, 672 F.3d 101, 112–13 (1st Cir. 2012) (citing <u>Neron v. Tierney</u>, 841 F.2d 1197, 1199 (1st Cir. 1988)).  The burden is on Petitioner to show that he did not have a realistic opportunity to fully and fairly litigate his Fourth Amendment claim.  <u>Sanna</u>, 265 F.3d at 8.

Here, the Court finds that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court, both at an evidentiary hearing before the trial court on the motion to suppress and on appeal to the SJC.  [S.A. at 190–207 (order on the motion to suppress, reviewing evidence presented at evidentiary hearing)]; <u>Mendez</u>, 69 N.E.3d at 972–75, 975 n.8 (discussing order on motion to suppress and reviewing evidence to conclude that officers had reasonable suspicion to stop and search Petitioner and Mendez); <u>see</u> <u>Mendez v. Goguen</u>, No. 17-cv-40076, 2020 U.S. Dist. LEXIS 222586, at *13 (D. Mass. Nov. 14, 2020) (discussing motion to suppress hearing and appeal of co-defendant Mendez and finding that "[i]t is clear that this process at the trial and appellate level was sufficient to constitute a 'full and fair litigation' of the claim"), <u>report and recommendation adopted</u>, 2020 U.S. Dist. LEXIS 222376 (D. Mass. Nov. 30, 2020).

Petitioner's appellate brief detailed violations of both the Fourth Amendment and Article 14 of the Massachusetts Constitution, relying heavily on cases interpreting Article 14 and only twice mentioning a federal case, Terry v. Ohio, 392 U.S. 1 (1968).  [S.A. at 32, 46 (citing Terry)].  Under Terry, a search and seizure is constitutional under the Fourth Amendment if a police officer reasonably suspects that someone is committing or is about to commit a violent crime.  Terry, 392 U.S. at 30–31.  This reasonable suspicion must be based on specific, articulable facts.  Id. at 21 ("[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."); see Commonwealth v. DePeiza, 868 N.E.2d 90, 97 (Mass. 2007) (citing Terry and stating that reasonable suspicion "must be grounded in specific, articulable facts and reasonable inferences [drawn] therefrom rather than on a 'hunch'" (internal quotation marks omitted)); Commonwealth v. Wren, 463 N.E.2d 344, 345 (Mass. 1984) (citing Terry and stating that an officer's "suspicion must be based on specific, articulable facts and reasonable inferences drawn therefrom.  A hunch will not suffice").

In reviewing Petitioner's contentions regarding the motion to suppress, the SJC relied on Massachusetts case law as well as Terry.  See Mendez, 69 N.E.3d at 973–75.  The SJC referenced the Terry standard (without citing the case) as a "[r]easonable suspicion [that] must be grounded in specific, articulable facts and reasonable inferences [drawn] therefrom rather than on a 'hunch.'"  Id. at 972 (internal quotation marks omitted) (third alteration in original) (quoting DePeiza, 868 N.E.2d at 95).  "A failure to cite Supreme Court decisions does not itself suggest a state court decision is 'contrary to' such precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Dagley v. Russo, 540 F.3d 8, 16 (1st Cir. 2008) (citation omitted) (quoting Mitchell v. Esparza, 540 U.S. 12, 16 (2003)); see also Logan v.

9

Gelb, 790 F.3d 65, 71 (1st Cir. 2015) (affirming denial of habeas petition where SJC relied on its

own precedent, which in turn was applying Supreme Court precedent).  Thus, the SJC was not

required to explicitly cite to Terry where it cited DePeiza, Wren, and Commonwealth v. Scott,

801 N.E.2d 233 (Mass. 2004), all of which cite Terry and apply the same standard from Terry

that the SJC applied to Petitioner's claim.  Mendez, 69 N.E.3d at 973 (citing Scott, 801 N.E.2d at

237); id. at 975 (citing Scott and noting that Scott was citing Terry).  The SJC found that the

search was based on articulable facts that raised a reasonable suspicion of criminal activity.  Id.

at 975.  Because Petitioner fully and fairly litigated his Fourth Amendment claim in state court,

habeas relief cannot be granted on this ground.  See Stone, 428 U.S. at 494.

### B.      Ground Two: Statements During Prosecution's Closing

Petitioner maintains that during closing arguments, the prosecutor argued facts not in

evidence, specifically that Petitioner was in the back seat of Platts' car during the shooting when

Petitioner says he was never in the car, and that this denied him his due process rights.  [ECF No.

37 at 24–25].[3]  Respondent argues that Petitioner mischaracterizes the prosecutor's statements,

---

[3] In his reply brief, Petitioner discusses another alleged instance of misconduct during the
prosecution's closing argument: statements made about Mendez's credibility.  [ECF No. 55 at
12–14].  Petitioner did not raise this issue in his opening brief, [ECF No. 37], and as a result
Respondent did not address it in his opposition, [ECF No. 44].  The petition stated that the
prosecutor "argued facts not in evidence and invited jurors to reject the codefendant's testimony"
in discussing Ground Two.  [ECF No. 1 at 7].  The Court finds that this was not clearly
articulated as two separate bases for relief, and the lack of analysis or discussion on this issue in
Petitioner's opening brief is consistent with this finding.  On appeal, the SJC noted that counsel
for Petitioner and Mendez did not object to these purported credibility attacks at trial and,
analyzing their claims for error, found none.  Mendez, 69 N.E.3d at 977–78; see id. at 977
("Here, where the defendant made pretrial statements to police that were different from his trial
testimony, the prosecutor had a basis in the evidence for pointing out that his trial testimony did
not match his prior statements to police and, instead, conformed to the Commonwealth's
evidence.").  This same ground for habeas relief was denied as to Mendez.  Mendez, 2020 U.S.
Dist. LEXIS 222586, at *23 ("By voluntarily testifying at trial, [Mendez] put his credibility at
issue.  Indeed, 'when a defendant takes the stand, his credibility may be impeached and his
testimony assailed like that of any other witness.'" (quoting Portuondo v. Agard, 529 U.S. 61, 69

and that the prosecutor instead said that Petitioner had been in the car during the robbery that took place *prior* to the shooting, which was consistent with the evidence presented.  [ECF No. 44 at 15, 17].

"There is no precise federal standard governing due process claims based on a prosecutor's remarks."  Kirwan v. Spencer, 631 F.3d 582, 589 (1st Cir. 2011) (quoting Dagley, 540 F.3d at 15 n.3).  In such cases, the First Circuit looks to well-established federal law, see id., where "the relevant question" when assessing whether a prosecutor's statements violated a defendant's due process rights "is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process,'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  It "is not enough that the prosecutors' remarks were undesirable or even universally condemned."  Id. (quoting Darden v. Wainwright, 699 F.2d 1031, 1036 (11th Cir. 1983)).

During his closing argument, the prosecutor asserted that Petitioner "definitely [got] in [Platts'] car" at some time during the robbery.  [S.A. at 2264].  As Respondent notes, however, the prosecutor did not state that Petitioner was in the car at the time of the shooting, but rather that Petitioner got into the car to effectuate the robbery and then stepped out of the car before Mendez shot Platts.  [ECF No. 44 at 17; S.A. at 2261 (noting that Petitioner was "already out of the car" when he "hear[d] the gun" and had a "head start" on Mendez)].  Petitioner's attorney objected to this as a misstatement of the evidence, [S.A. at 2271], and the trial court gave a corrective instruction to the jury, reminding them that counsels' closing arguments were not evidence and that the jurors' recollection of the evidence was "the guiding principle," [id. at

---

(2000))).  Even if Petitioner had raised this issue in his petition or opening brief, the Court agrees that the SJC did not unreasonably apply federal law under Portuondo where Mendez put his credibility at issue by presenting contradictory accounts of the incidents.  See id.

2277].  The trial court also told the jury that it could make "reasonable inferences" from all of the evidence presented at trial.  [Id. at 2278].

The SJC rejected Petitioner's position on appeal based on a Massachusetts case that holds that a prosecutor "may analyze the evidence and suggest reasonable inferences the jury should draw from that evidence."  Commonwealth v. Semedo, 921 N.E.2d 57, 69 (Mass. 2010).  Here, the SJC found that the prosecutor did just that: "there was evidence from which the jury could infer that [Petitioner] had been seated in the back seat of the victim's vehicle just before the shooting, including . . . [a] witness [who] testified that he saw [Mendez and Petitioner] walk toward the victim's vehicle just before the gun was fired."  Mendez, 69 N.E.3d at 978.  Petitioner is correct that there is evidence that tends "to prove that [Petitioner] was not in the vehicle at the exact time of the shooting," but the prosecutor's version of events, based on his closing argument, was "that [Petitioner] left the vehicle with the cash prior to the shooting."  Id. Petitioner also asserts that he would not have had time to enter the car based on the testimony of one witness who said that he heard a gunshot within "seconds" of seeing Petitioner and Mendez walk towards Platts' car.  [ECF No. 37 at 27].  As the prosecutor noted during closing, however, there was other evidence—including testimony from Mendez about having a conversation with Platts while sitting in the car with him—to support a reasonable inference that more time had elapsed than mere "seconds."  [S.A. at 2264; S.A. at 2114–16 (Mendez's testimony about getting into Platts' car and having a conversation)].

"The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference."  Tot v. United States, 319 U.S. 463, 467 (1943); see Rodriquez v. Roden, 826 F. Supp. 2d 319, 321 (D. Mass. 2010) ("This is what is called a 'permissive inference,' i.e., an inference which the jury is free to accept or reject from all the

evidence in the case." (citing <u>Tot</u>, 319 U.S. at 467)).  In <u>Kirwan v. Spencer</u>, the First Circuit reviewed a statement and inference similar to those Petitioner is challenging.  631 F.3d at 589. There, the prosecutor made an inference during closing arguments that the habeas petitioner had said he was "going to go get" a shank, whereas the evidence was that he "said *something* about a shank" without necessarily saying that he was going to go and get one.  <u>Id.</u> (emphasis added). The First Circuit held that there was evidence to support the statement, so that it was unlikely to infect the jury's verdict.  <u>Id.</u> at 590.  In addition, the First Circuit noted that the court there had issued an instruction nearly identical to the one that the court issued at Petitioner's trial.  <u>Id.</u>  In summary, the First Circuit held that "[g]iven how minor the misstatement was, that the evidence was overwhelmingly against [petitioner], and that the judge did instruct the jury that their recollection of the evidence was controlling . . . the prosecutor's comments did not result in a fundamentally unfair trial."  <u>Id.</u>

The Court finds that the prosecutor's remark in this case was consistent with evidence presented at trial and did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  <u>Donnelly</u>, 416 U.S. at 644; <u>see</u> <u>Darden</u>, 477 U.S. at 181. The Court will therefore not grant habeas relief on this ground.

### C.    Ground Three: Insufficiency of the Evidence

Next, Petitioner challenges the sufficiency of the evidence underlying his conviction, stating that his conviction was based on circumstantial evidence and inferences.  [ECF No. 37 at 28–29].  Respondent argues that there was sufficient evidence and that any conflicting inferences must be resolved in favor of the prosecution under the governing habeas standard.  [ECF No. 44 at 28–29].

A challenge to the sufficiency of the evidence for conviction is governed by the Supreme

Court's decision in Jackson v. Virginia, 443 U.S. 307 (1979).[4]  Jackson held that the

constitutional right to due process guarantees "that no person shall be made to suffer the onus of

a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a

trier of fact beyond a reasonable doubt of the existence of every element of the offense."  443

U.S. at 316.  "More succinctly, the relevant test . . . from Jackson is 'whether, after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt.'"  O'Laughlin v. O'Brien, 568

F.3d 287, 299 (1st Cir. 2009) (quoting Jackson, 443 U.S. at 319).

"In evaluating the evidence, the reviewing court must exercise 'some degree of

intellectual rigor,' and not credit 'evidentiary interpretations and illations that are unreasonable,

insupportable, or overly speculative.'"  Akara v. Ryan, 270 F. Supp. 3d 423, 431 (D. Mass.

2017) (quoting Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008)).  The federal habeas court

"faced with a record . . . that supports conflicting inferences must presume . . . that the trier of

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

Linton v. Saba, 812 F.3d 112, 123 (1st Cir. 2016) (alterations in original) (quoting Jackson, 443

U.S. at 326); see Housen v. Gelb, 744 F.3d 221, 226 (1st Cir. 2014) ("[A] habeas court may not

---

[4] In its opinion on Petitioner's appeal, the SJC invoked Commonwealth v. Latimore, 393 N.E.2d
370, 375 (Mass. 1979), which adopted Jackson as the sufficiency of the evidence standard in
Massachusetts.  Mendez, 69 N.E.3d at 979; see Leftwich v. Maloney, 532 F.3d 20, 24 (1st Cir.
2008) ("Because the Latimore court adopted the governing federal constitutional standard as the
Massachusetts standard for sufficiency of the evidence challenges, . . . we can securely reason
that in scouring the record for Latimore error and finding none the SJC effectively answered the
federal constitutional question.").  "That the SJC applied Latimore rather than Jackson does not
diminish its claim to deference under AEDPA, as 'the Latimore test . . . is functionally identical
to the Jackson . . . standard.'"  Linton v. Saba, 812 F.3d 112, 123−24 (1st Cir. 2016) (quoting
Logan, 790 F.3d at 71).

freely reweigh competing inferences but must accept those reasonable inferences that are most compatible with the jury's verdict."  (internal citation omitted)).

In the habeas context, "Jackson claims face a high bar."  Carrington v. Spencer, No. 14-cv-13102, 2015 WL 3874872, at *7 (D. Mass. June 23, 2015) (quoting Coleman v. Johnson, 566 U.S. 650, 651 (2012)); see Hurtado v. Tucker, 245 F.3d 7, 19–20 (1st Cir. 2001) ("[A]s a general rule, federal courts should be particularly cautious about issuing habeas, on grounds of the objective unreasonableness of a state court's conclusion that the evidence is sufficient . . . .").  The question for the reviewing court is not whether the state court was correct in finding the evidence supported the conviction beyond a reasonable doubt, but instead "whether the SJC's application of Jackson to [a petitioner's] case was 'objectively unreasonable.'"  O'Laughlin, 568 F.3d at 299; see Linton, 812 F.3d at 123 ("[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was 'objectively unreasonable.'" (alteration in original) (quoting Parker v. Matthews, 567 U.S. 37, 43 (2012))).[5]

---

[5] "As a general matter, sufficiency claims are evaluated under [§] 2254(d)(1)."  Correa v. Ryan, 216 F. Supp. 3d 193, 196 (D. Mass. 2016) (citing O'Laughlin, 568 F.3d at 298).  Section 2254(d)(1) provides for habeas relief where a state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  In contrast, § 2254(d)(2) allows for habeas relief where a state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d)(2).  Here, Petitioner argues that "[i]t was objectively unreasonable to conclude, based upon unsupported inferences and contrary to physical evidence and percipient witness testimony, that [Petitioner] did join in an armed robbery of Platts."  [ECF No. 37 at 32].  "Even were the Court to proceed under [§] 2254(d)(2), . . . this would require evaluating the reasonableness of the state court's factual findings under Jackson v. Virginia, 443 U.S. 307 (1979), which provides the sufficiency standard."  Correa, 216 F. Supp. 3d at 197; see O'Laughlin, 568 F.3d at 299 ("[T]he 'unreasonable application of' prong of § 2254(d)(1) 'reduces to a question of whether the state court's derivation of a case-specific rule from the [Supreme] Court's generally relevant jurisprudence appears objectively reasonable.'" (alterations in original) (quoting Hurtado, 245 F.3d at 16)).  Accordingly, the Court discerns "no meaningful

1.      Sufficiency of the Evidence of Armed Robbery in Connection with
        Felony-Murder

"To make a case for felony-murder, the Commonwealth . . . only [had to] establish that

[Petitioner] participated as a joint venturer in an armed robbery of the victim, and that the victim

was killed in furtherance of that robbery."  Mendez, 69 N.E.3d at 979 n.12.  The SJC set forth

the evidence of the armed robbery in the light most favorable to the Commonwealth:

> [Petitioner] and Mendez earlier robbed Moitoso with a gun.  Thereafter, [Petitioner]
> arranged to meet the victim at the housing complex.  He knew that the victim had
> a large sum of cash with him through conversations the two had earlier in the day.
> [Petitioner] was seen walking toward the victim's vehicle and was carrying a gun.

Id. at 979.  Petitioner describes this and other evidence as circumstantial, conflicting, and based

on inference.  [ECF No. 37 at 28–29].  The SJC held that the jury's conclusions, including

related inferences, were reasonable in light of the evidence presented at trial.  Mendez, 69 N.E.3d

at 979.

First, Petitioner claims that there is only circumstantial evidence pointing to his

knowledge of how much money Platts was carrying on the day of his murder.  [ECF No. 37 at

30].  He notes that there was no testimony that Platts had told Petitioner that he was carrying a

large sum of money, and that this evidence was based solely on inference.  [Id.].  As the SJC

noted, the jury's determination that Petitioner knew Platts had a large sum of cash was consistent

with evidence presented at trial.  Mendez, 69 N.E.3d at 979.  A witness testified to overhearing

two telephone conversations between Petitioner and Platts on the day of the murder.  [S.A. at

1286–90].  During the first conversation, Platts mentioned that he planned to buy a car and had

talked the dealer down to $2,500, and during the second conversation, Platts mentioned that he

was leaving the dealership without buying the car.  [Id.].  The SJC found that the jury could have

---

difference" between the relevant inquiry under § 2254(d)(1) versus § 2254(d)(2) under these
circumstances.  Correa, 216 F. Supp. 3d at 197.

reasonably inferred from these facts that Petitioner knew Platts was in possession of a large amount of cash.  Mendez, 69 N.E.2d at 979; see Housen, 744 F.3d at 226.

Petitioner further claims that there is insufficient evidence that the cash that was found on him during his arrest was stolen from Platts, because the cash did not match a witness's description of the cash that Platts was carrying earlier on the day of the murder and there was no blood on it.  [ECF No. 37 at 31].  During trial, the same witness who testified about the telephone calls between Platts and Petitioner also testified that she saw Platts with approximately $4,200 in cash on the day of the murder.  [S.A. at 1282, 1301].  The witness further testified that Platts typically kept his cash in $1,000 increments, with each increment folded in half and secured by a rubber band.  [Id. at 1281].  According to the witness, several hours before the murder, she saw Platts with a large amount of cash secured by blue and manilla rubber bands. [Id. at 1300–01].  When he was arrested, Petitioner was found with cash that was folded and secured by a red rubber band.  Mendez, 69 N.E.3d at 979 n.13.

The SJC found that the jury could have reasonably concluded that either Platts rearranged his cash prior to meeting Petitioner and Mendez, or that the witness was mistaken about how the cash was arranged.  Mendez, 69 N.E.2d at 979; see Housen, 744 F.3d at 226.  As to the absence of blood on the cash, given the Commonwealth's theory—that Petitioner left the car with the cash prior to the murder—it was not unreasonable for the jury to determine that Petitioner had taken the cash from Platts.  On habeas review, where there are "conflicting inferences," the reviewing court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Linton, 812 F.3d at 123 (quoting Jackson, 443 U.S. at 326).  It was reasonable for the SJC to determine that the jury reasonably resolved any conflicts in favor of the prosecution based on the evidence presented.

Finally, Petitioner claims that the $124 in cash and fourteen bags of marijuana that were found on Platts and in his car indicated that he was not robbed.  [ECF No. 37 at 31].  As the SJC noted, it would have been reasonable for the jury to conclude that because Petitioner and Mendez were more interested in the large sum of cash they stole from Platts, they would not have wasted time searching his pockets for the additional $124 in cash or taking the small bags of marijuana that were in his car.  Mendez, 69 N.E.3d at 979.

Petitioner's assertion that the Commonwealth's case was "premised largely on circumstantial evidence and inferences," [ECF No. 37 at 29], relies primarily on the First Circuit's opinion in O'Laughlin v. O'Brien for the contention that "[a]lthough circumstantial evidence alone can support a conviction, there are times that it amounts to only a reasonable speculation and not to sufficient evidence."  568 F.3d at 302 (alteration in original) (quoting Newman v. Metrish, 543 F.3d 793, 796 (6th Cir. 2008)).  In O'Laughlin, a petitioner stood accused of severely beating a neighbor.  568 F.3d at 289.  Police were unable to find any evidence in his apartment or in the neighbor's that could link the petitioner to the crime, id. at 291–93, and while the police did identify a baseball bat found in the woods that belonged to the petitioner, the bat had only trace amounts of blood that could not be linked to the victim, id. at 294.  As a result of this slim evidence, the First Circuit granted the petitioner habeas relief.  Id. at 308–09.  Here, in contrast, the jury was presented with evidence to support a reasonable conclusion—rather than mere speculation—that Petitioner and Mendez conducted two armed robberies within an hour, that Petitioner knew Platts was likely to have over $4,000 in cash on hand, and that the large amount of cash was Petitioner and Mendez's focus.  The Court therefore finds that the SJC's application of Jackson was not "objectively unreasonable."  See O'Laughlin, 568 F.3d at 299 (quoting Hurtado, 245 F.3d at 16).

     2.    <u>Sufficiency of the Evidence of Murder in Connection with Felony-Murder</u>

Petitioner also argues that, if he had left the car when the murder occurred as the

Commonwealth suggested at trial, then the armed robbery was complete, and therefore Platts'

murder was not committed in the course of the robbery.  [ECF No. 37 at 32–33].  Petitioner did

not advance this theory to the SJC on appeal.  [S.A. at 53–55]; <u>see</u> <u>Mendez</u>, 69 N.E.3d at

978–79.  As a result, this second theory of insufficient evidence is unexhausted.

The exhaustion requirement for habeas review is satisfied only if "a petitioner can

successfully claim that he has presented the same legal theory to the state court" by "presenting

the substance of a federal constitutional claim in such a manner that it 'must have been likely to

alert the court to the claim's federal nature.'"  <u>Dougan v. Ponte</u>, 727 F.2d 199, 201 (1st Cir.

1984) (quoting <u>Daye v. Att'y Gen. of N.Y.</u>, 696 F. 2d 186, 192 (2d Cir. 1982) (en banc)).

Respondent argues that the claim is procedurally defaulted because Petitioner did not move for a

directed verdict on this ground, did not object to jury instructions on felony murder, and did not

pursue this claim before the SJC.  [ECF No. 44 at 32–33].  In order to find a claim procedurally

defaulted, a reviewing court must have "a high degree of confidence that the state court, if asked

to adjudicate the claim, would declare it to be procedurally defaulted."  <u>Pike v. Guarino</u>, 492

F.3d 61, 74 (1st Cir. 2007).[6]  "The SJC regularly enforces the rule that a claim not raised is

waived."  <u>Gunter v. Maloney</u>, 291 F.3d 74, 79 (1st Cir. 2002).

---

[6] In his reply brief, Petitioner does not concede procedural default, but asks the Court to excuse
any potential procedural default it may find for cause, citing ineffective assistance of counsel.
[ECF No. 55 at 15–16]; <u>see</u> <u>Gunter v. Maloney</u>, 291 F.3d 74, 80 (1st Cir. 2002) ("State
procedural default is excused and federal habeas review is permitted only if there is cause and
prejudice.").  Petitioner did not raise an ineffective assistance of counsel claim on appeal before
the SJC, [S.A. at 8–63 (appellate brief)], nor did he raise it in his petition or supporting
memorandum, [ECF Nos. 1, 37].  "Importantly, a federal habeas petitioner trying to excuse his
procedural default by showing ineffective assistance of counsel as cause must first have

"However, 'exhaustion is a prudential principle rather than a jurisdictional limitation,' and 'where, as here, a habeas petitioner's unexhausted claim is patently without merit, . . . the interests of judicial economy' recommend 'dispos[ing] of that claim once and for all.'" Marshall v. Bristol Superior Court, 753 F.3d 10, 17 (1st Cir. 2014) (alterations in original) (first quoting Pike, 492 F.3d at 71, then quoting Coningford v. Rhode Island, 640 F.3d 478, 483 (1st Cir. 2011)); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The Court finds that, even if this alternate theory of insufficient evidence were exhausted, Petitioner would not succeed on the merits of this claim. Petitioner does not allege that the SJC unreasonably applied federal law or reached a decision that was contrary to federal law. [ECF No. 37 at 32–33]. Instead, Petitioner relies on state law for his alternate theory. See [id. (first citing Mass. Gen. Laws ch. 265, § 1; then citing Commonwealth v. Zanetti, 910 N.E.2d 869 (Mass. 2009))]. "Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised." Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (citing Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)). The Court will therefore assume that Petitioner bases this challenge on an unreasonable application of Jackson.

The SJC has held that, "[f]or purposes of felony-murder, the homicide and the predicate felony 'need only to have occurred as part of one continuous transaction,' and the connection is sufficient as long as the predicate felony and the homicide 'took place at substantially the same

---

presented the ineffective assistance claim to the state court." Lynch v. Ficco, 438 F.3d 35, 46 (1st Cir. 2006).

time and place.'" Commonwealth v. Morin, 85 N.E.3d 949, 957 (Mass. 2017) (quoting Commonwealth v. Ortiz, 560 N.E.2d 698, 700 (Mass. 1990)). "The killing may occur after the completion of the predicate felony as long as the killing is within the res gestae of the felonious conduct." Commonwealth v. Tillis, 486 Mass. 497, 507 (2020) (quoting Morin, 85 N.E.3d at 957).

Contrary to Petitioner's assertion, it was not unreasonable for the jury to determine, based on the evidence presented, that the events here were part of a continuous transaction, taking place at substantially the same time and place: Petitioner and Mendez met Platts at his car armed and with the intent to rob Platts, then Petitioner left with the cash, leaving behind Mendez who was still sitting in the car with Platts before shooting him moments later and then fleeing the scene. As a result, "the jury were warranted in finding that the interval in time and distance between the robbery and the shooting showed no detachment from the enterprise and that the shooting was one of the probable consequences of the armed robbery." Commonwealth v. Padgett, 691 N.E.2d 239, 244 (Mass. App. Ct. 1998). Thus, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." O'Laughlin, 568 F.3d at 299 (quoting Jackson, 443 U.S. at 319). The Court therefore finds that there is no merit to Petitioner's request for habeas relief on this unexhausted ground.

### D.      Ground Four: Improper Joinder

Petitioner next contends that the joinder of multiple offenses and defendants at his trial was an abuse of discretion and deprived him of his Fifth Amendment right to a fair trial and his due process rights. [ECF No. 37 at 33]. Respondent states that Petitioner's misjoinder of

defendants claim is unexhausted, [ECF No. 44 at 37], and that, in any case, Petitioner has not

been prejudiced by joinder of either the claims or defendants, [id. at 39–42].

       1.    <u>Joinder of Offenses</u>

     "As with the severance of parties, it is unclear whether there is clearly established federal

law with respect to severance of claims."  <u>Hernandez v. Massachusetts</u>, 234 F. Supp. 3d 316, 326

(D. Mass. 2017).  Some courts have considered a footnote in the Supreme Court's <u>United States</u>

<u>v. Lane</u> to be clearly established federal law as to the joinder of claims.  474 U.S. 438, 446 n.8

(1986) ("Improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would

rise to the level of a constitutional violation only if it results in prejudice so great as to deny a

defendant his Fifth Amendment right to a fair trial.").  One of those district courts, however,

acknowledged that even if <u>Lane</u> is "clearly established federal law," it "simply states that

misjoinder may be a constitutional violation if it prevents a defendant from obtaining a fair trial,"

without providing specific parameters for analysis.  <u>Cormier v. Saba</u>, 953 F. Supp. 2d 274, 287

(D. Mass. 2013).  The Court will assume without deciding that <u>Lane</u> is clearly established federal

law.  <u>See</u> <u>Hernandez</u>, 234 F. Supp. 3d at 326 (assuming that <u>Lane</u> is clearly established);

<u>Mendez</u>, 2020 U.S. Dist. LEXIS 222586, at *15 (same).

     The SJC's precedent on misjoinder of offenses also focuses on whether a defendant was

prejudiced by the joinder, and therefore "stands for the basic proposition set out by the Supreme

Court in <u>Lane</u>."  <u>Hernandez</u>, 234 F. Supp. 3d at 326; <u>see</u> <u>Mendez</u>, 69 N.E.3d at 976 (citing

<u>Commonwealth v. Sullivan</u>, 768 N.E.2d 529, 534 (Mass. 2002)); <u>Sullivan</u>, 768 N.E.2d at 534

("Where offenses have been properly joined under rule 9(a)(1), the burden is on the defendant to

show that he nevertheless has been prejudiced by the joinder, and that severance should have

been granted . . . .").

Petitioner claims that the offenses—the armed robbery of Moitoso and the armed robbery and murder of Platts—were not similar and that joinder of these offenses was therefore unjustified.  [ECF No. 37 at 38–39].  In discussing joinder of the claims as to Petitioner, the SJC observed that

> joinder is appropriate where offenses are related unless such joinder "is not in the best interests of justice."  Offenses are related for the purposes of joinder "if they are based on the same criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan."  Factors to take into consideration include "factual similarities, closeness of time and space, and 'whether evidence of the other offenses would be admissible in separate trials on each offense.'"

Mendez, 69 N.E.3d at 976 (citations omitted) (first quoting Mass. R. Crim. P. 9(a)(3); then quoting Commonwealth v. Hernandez, 42 N.E.3d 1064 (Mass. 2015)).  Applying this standard, the SJC found that there was "considerable evidence" linking the Moitoso and Platts events, such that a jury could have found that: both robberies involved guns; they took place within an hour of each other and within ten miles of each other; and both involved asking the victims to meet for purposes of a marijuana purchase.  Id.  The SJC also found that evidence of each robbery could have been introduced at a trial on the other robbery to show a common pattern or scheme.  Id.  Lastly, the SJC found that neither Petitioner nor Mendez were prejudiced by the joinder of offenses where the trial judge explained to the jury that they should not use the evidence for propensity purposes and the jury are presumed to follow instructions.  Id.  This analysis was consistent with the Supreme Court's discussion of joinder in Lane and included a specific finding as to prejudice.  See id.

"The SJC considered [Petitioner's] joinder claims fully and applied standards which conform with and did not unreasonably apply the standards employed under federal law . . . ."

23

<u>Hernandez</u>, 234 F. Supp. 3d at 327–28; <u>see</u> <u>Bebo</u>, 906 F.3d at 134.  Petitioner is therefore not entitled to relief on this ground.

        2.    <u>Joinder of Defendants</u>

As a starting point, Respondent correctly states that this is a new claim that Petitioner did not raise at trial or before the SJC.  [ECF No. 44 at 37]; <u>see</u> [S.A. at 673–74 (transcript of hearing on motion for joinder, where counsel for Petitioner argued against joinder of offenses but stated "I think it would be common practice to try them together"); S.A. at 8–63 (appellate brief)].  In any case, although this ground for relief is unexhausted, the Court will address it on the merits as it finds that the "unexhausted claim is patently without merit."  <u>Marshall</u>, 753 F.3d at 17; <u>see</u> 28 U.S.C. § 2254(b)(2).

Petitioner cites to <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993), on this issue, [ECF No. 37 at 35, 42], but other courts have questioned whether <u>Zafiro</u> is clearly established federal law in the § 2254 context given that it analyzes the Federal Rules of Criminal Procedure rather than discussing analogous state rules, <u>see</u> <u>Hernandez</u>, 234 F. Supp. 3d at 325 ("This has not been addressed by the First Circuit, but the Ninth Circuit has held that <u>Zafiro</u> does not apply to states, and therefore does not constitute 'clearly established' federal law.").[7]  The Court will assume without deciding that <u>Zafiro</u> is clearly established federal law on this issue.  <u>Zafiro</u> held that, under the Federal Rules, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." 506 U.S. at 538–39.  Severance is appropriate "only if there is a serious risk that a joint trial

---

[7] Under the Massachusetts Rules of Criminal Procedure, a party may move for severance by setting forth grounds for prejudice resulting from the joinder.  Mass. R. Crim. P. 9(d)(2).  Under the Federal Rules of Criminal Procedure, a judge can sever defendants' trials "or provide any other relief that justice requires" if joinder "appears to prejudice a defendant."  Fed. R. Crim. P. 14(a).

would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539.  Yet "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Id. at 540.

The Supreme Court "has long recognized that joint trials 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" Lane, 474 U.S. at 449 (quoting Bruton v. United States, 391 U.S. 123, 134 (1968)).  "[U]nder federal law, as under Massachusetts law, 'mutually antagonistic' or 'irreconcilable' defenses may, in some circumstances, be so prejudicial as to mandate severance, but courts have reversed relatively few convictions on such grounds." Hernandez, 234 F. Supp. 3d at 325 (quoting Zafiro, 506 U.S. at 538).  "Mutual antagonism exists where the acceptance of one party's defense will preclude the acquittal of the other.  Or, in other words, where the sole defense of each is the guilt of the other." Id.

Petitioner argues that joinder of his case with Mendez's prejudiced the jury against Petitioner and denied him his right to a fair trial.  [ECF No. 37 at 41].  Specifically, Petitioner states that the evidence weighed heavily against Mendez but was less substantial as to Petitioner, that Mendez testified that Petitioner was with him at the Moitoso robbery and had a gun, and that Mendez testified that Petitioner was with him at the Platts robbery.  [Id. at 41–43].

Although Petitioner references irreconcilable defenses, he does not specify which, if any, irreconcilable defenses he and Mendez presented.  [ECF No. 37 at 36].  Mendez did admit to certain events while testifying, however, Petitioner had an opportunity to cross-examine Mendez about his statements.  In addition, Petitioner concedes that other witnesses provided conflicting testimony, [id. at 41], so that the jury was free to decide which version of events or witnesses to

believe.  Had the two defendants been tried separately, the Commonwealth could have called

Mendez as a witness in Petitioner's trial to provide the same evidence against Petitioner.  See

Zafiro, 506 U.S. at 540 ("While 'an important element of a fair trial is that a jury consider *only*

relevant and competent evidence bearing on the issue of guilt or innocence,' a fair trial does not

include the right to exclude relevant and competent evidence.  A defendant normally would not

be entitled to exclude the testimony of a former codefendant if the district court did sever their

trials, and we see no reason why relevant and competent testimony would be prejudicial merely

because the witness is also a codefendant." (quoting Bruton, 391 U.S. at 131 n.6)).  In addition,

Petitioner has failed to demonstrate that his counsel's concession during his closing argument

that Petitioner was carrying a firearm was a result of the joinder or, for that matter, Mendez's

testimony.  [Id.; S.A. at 2218 ("The Commonwealth has proved very clearly that [Petitioner] is

guilty of the crime of possession of a firearm, *even if Mendez didn't really want to say so, it's

obvious he had the firearm*.  Had the firearm from the beginning, had the firearm to the end.  He

was caught with a firearm." (emphasis added))].[8]

Where, as here, joinder of defendants is permissible under state and federal law and

Petitioner has failed to show prejudice resulting from the joinder that rose to a level of violating

his right to due process and a fair trial, he has failed to state a claim for habeas relief.  See Zafiro,

506 U.S. at 539; Bebo, 906 F.3d at 134.

---

[8] Again, Petitioner did not raise a claim of ineffective assistance of counsel on appeal or in his
petition.  Even if he had, Petitioner would have needed to "overcome the presumption that, under
the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland
v. Washington, 466 U.S. 668, 689 (1984) (quoting Michel v. Louisiana, 350 U.S. 91, 101
(1955)).

### E.     Ground Six: Jury Instruction Regarding an Immunized Witness

Finally, Petitioner contends that the trial court's immunized witness instruction, while complying with state law, violated his due process rights.  [ECF No. 37 at 48].[9]

Petitioner does not cite clearly established federal law in support of this ground for relief. The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"  Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (quoting Estelle, 502 U.S. at 67).  "Instructions in a state trial are a matter of state law to which substantial deference is owed."  Lucien v. Spencer, No. 07-cv-11338, 2015 U.S. Dist. LEXIS 134154, at *34 (D. Mass. Sept. 30, 2015) (quoting Niziolek v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982)).  "As a general rule, improper jury instructions will not form the basis for federal habeas corpus relief." Niziolek, 694 F.2d at 290 (citing Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  "In reviewing the habeas petition of a state prisoner," a federal court's "function ends when [it] determine[s] that the challenged jury instructions violated no federal constitutional rights of the petitioner." Id.

"Relief through a habeas corpus petition is proper only where 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  Rosado v. Allen, 482 F. Supp. 2d 94, 114 (D. Mass. 2007) (quoting Estelle, 502 U.S. at 72).  "Before a federal court may overturn a conviction resulting from a state trial [because of an erroneous jury instruction], it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  Lucien, 2015 U.S. Dist. LEXIS 134154, at *34

---

[9] Petitioner did not object to this instruction at trial, but the SJC reviewed the claim without commenting on waiver or procedural default.  See Mendez, 69 N.E.3d at 980.  Respondent does not press procedural default on this ground.  [ECF No. 44 at 45].

(alteration in original) (citing Cupp, 414 U.S. at 147).

On appeal, Petitioner argued that the trial judge's instruction regarding Moitoso's immunity from prosecution in connection with the attempted marijuana sale impermissibly gave credibility to Moitoso, thereby violating Petitioner's due process rights.  [S.A. at 217–22].[10]  The SJC found no error in the instruction because it "accurately described how Moitoso obtained immunity, and it was preceded by an instruction that the jury may consider any promises, rewards, or inducements made when assessing witness credibility."  Mendez, 69 N.E.3d at 980.

The trial judge instructed the jury as follows:

> In assessing the credibility of the witness, you may consider any past, present, or future, what we call, promises, rewards, or inducements that may have been made to the witness, whether they've been expressly made or implied. . . .  It is for you to determine whether there were any promises, rewards, or inducements made to any witness that has appeared before you, and if so, whether they've influenced the witness's testimony in any way [you] consider to be meaningful.  Now, we had them—one witness, Mr. Moitoso, who you heard was granted immunity.  You may take that into consideration in assessing his credibility.

[S.A. at 2289–90].  The trial judge went on to explain the process of immunity, including the specific order on immunity that the court issued as to Moitoso.  [Id. at 2290–92].  After issuing additional instructions as to Mendez, the trial judge "conclude[d] these instructions about assessing the credibility of witnesses" by advising the jury "not . . . to leave [their] commonsense at the courtroom door.  To the contrary," he advised them to "draw on the lessons of [their] life experience and [their] commonsense in making judgments as to who to believe, in making judgments as to who is being candid, or who is—who is acting like a phony, or what is authentic or what is not . . . ."  [Id. at 2294].

---

[10] Petitioner raised this and several other claims in a separate appellate brief pursuant to Commonwealth v. Moffett, 418 N.E.2d 585 (Mass. 1981).  [S.A. at 213–26].

At no time did the trial judge vouch for or provide assurances as to Moitoso's credibility. Instead, he instructed the jury about what immunity meant in general and what it meant with regard to Moitoso in particular.  He instructed the jury to use their common sense in making credibility determinations and to take into consideration whether a witness may have been given any promise or inducement to testify and how that might impact their testimony.  Given the trial court's instructions, Petitioner has failed to demonstrate that the instructions were improper or that they "so infected the entire trial that the resulting conviction violates due process."  <u>Estelle</u>, 502 U.S. at 72 (quoting <u>Cupp</u>, 414 U.S. at 147).  As a result, habeas relief is not appropriate on this ground.  <u>See</u> <u>Niziolek</u>, 694 F.2d at 290.

## IV.    CONCLUSION

Accordingly, Petitioner's petition for a writ of habeas corpus, [ECF No.1], is <u>DENIED</u>. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner.  Rules Governing Section 2254 Cases, R. 11(a).  The Court declines to grant a certificate of appealability.

**SO ORDERED.**

March 11, 2021                                          /s/ Allison D. Burroughs
                                                                 ALLISON D. BURROUGHS
                                                                 U.S. DISTRICT JUDGE